UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-80136-Cr-Hurley/Vitunac

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RAYMOND KRAMER,
and AARON SPOERKE,

    Defendants.
_____/



FILED by ___ D.C.

JAN 04 2008

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT & RECOMMENDATION

THIS CAUSE is before the Court on general Order of Reference from United States District Judge Daniel T.K. Hurley for disposition of all pending pretrial criminal motions. Pending before the Court is Defendant Aaron Spoerke's Motion to Suppress Verbal Statement of Defendant Based on Miranda Violation and Request for Hearing (DE 73), filed December 13, 2007. The Government filed a Response (DE 76) on January 2, 2008. This matter is now ripe for review.

### Defendant's Written Motions to Suppress

Defendant Spoerke moves the Court to suppress all statements obtained by law enforcement as a result of Officer Haugh's alleged failure to read the Defendant Miranda warnings following the August 15, 2007 traffic stop of co-defendant Kramer's vehicle. The Defendant claims that at the point in Officer Haugh's investigation that he observed the contents of the Taco Bell bag at the Defendant's feet, "it was clear that none of the occupants of the vehicle were [sic] free to leave and Officer Haugh did not tell the occupants otherwise." Therefore, the Defendant argues, the initial traffic stop changed at

this point from a <u>Terry</u> type encounter into a full blown criminal investigation and, at this time, Officer Haugh should have read the Defendant his <u>Miranda</u> rights before asking any more questions. See <u>Terry v. Ohio</u>, 392 U.S. 1, 27 (1968). The Defendant points to Officer Haugh's testimony during the November 9, 2007 Motion to Suppress, in which the officer stated that he did not read <u>Miranda</u> warnings to the occupants of the vehicle before asking them questions. Accordingly, the Defendant claims, the Court should suppress any statements obtained as a result of the alleged <u>Miranda</u> violation.

## The Government's Response

The Government maintains that the Court should deny Defendant's Motion to suppress. First, the Government argues that the Defendant's claim is without merit because, for <u>Miranda</u> to apply at a traffic stop, a defendant must be subject to a "restraint on his freedom of the degree associated with a formal arrest." <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983). The Government asserts that, here, the officer's reasonable suspicion that the Taco Bell bag at the Defendant's feet contained explosive devices did not ripen into probable cause to arrest the Defendant until after the Defendant admitted that the devices were in fact pipe bombs. Moreover, the Government argues, the officer's question posed to the Defendant, and his response, falls within the public safety exception to the <u>Miranda</u> requirement.

## Discussion

First, the Court finds that this Motion was not timely filed. According to the standing discovery order entered in this case, the deadline to file motions was October 22, 2007. The Defendant filed the instant motion on December 13, 2007. Therefore, the Court need

not address the merits of the motion to deny it as untimely filed.

Second, defense counsel stated at the prior motion to suppress hearing that he was not seeking to suppress any statements on voluntariness grounds, only that they were allegedly fruit of the poisonous tree of a claimed illegal stop. (Transcript, DE 68, p. 155). Nevertheless, counsel filed this motion after the hearing, despite his contrary representations to the Court.

Though untimely filed, the Court will address the merits of the instant motion. However, the Court notes that it has already taken testimony sufficient to rule on this motion at the November 9, 2007 and December 4, 2007 evidentiary hearings on the Defendants' previous motions to suppress physical evidence. The Court has already fully discussed the relevant facts of this case in its Report and Recommendation (DE 70) on Defendants' previous motions to suppress physical evidence and directs the reader to the Evidentiary Hearing section of that R&R for a full recitation of the relevant facts. At the evidentiary hearing Officer Haugh testified that, after making contact with Kramer and Guidel and patting them down for weapons, he made contact with Defendant Spoerke, asking if he had any weapons on him. (Transcript, p. 39). Spoerke advised that he had a knife, which he provided to the officer through the vehicle window. Officer Haugh then asked the Defendant to step out of the vehicle to conduct a quick patdown to make sure that he did not have any other weapons. The Defendant then exited the vehicle from the front passenger seat. Officer Haugh testified that, when the Defendant exited the vehicle, Haugh could see in plain view, on the front passenger floorboard, a white Taco Bell bag holding two items consisting of balls of duct tape with green strings attached. Officer Haugh testified that he believed these items were improvised explosive devices - "IED's."

3

Officer Haugh then shined his flashlight on what he "suspected to be the explosive devices." (Transcript, p. 41). He then conducted a patdown of the Defendant, finding a third pair of gloves, a flashlight and a cell phone wrapped in a ziplock bag – further increasing his suspicion of criminal activity.

After Officer Haugh patted down the Defendant, he testified that, "once I took his name, I sat him down on the curb next to the other two individuals." (Transcript, p. 44-45). Officer Haugh then addressed the fourth occupant of the vehicle, asking if he had weapons on him, asking him to step out of the vehicle, and conducting a frisk of him, finding a fourth pair of gloves and a waterproof cell phone. He then asked the fourth occupant for his name and identifying information.

At that point, once all four occupants were out of the vehicle and sitting on the side of the road on the curb, Officer Haugh testified that:

> A. I took a closer look inside the vehicle, looking at inside the Taco Bell bag, getting a closer look at the bombs. At one point you see me pulling them out and when I take a much closer look, and you can see me take them out, and put them on the roof of the vehicle and I'm asking the four subjects what they are.
> Q. So that is 2:38 a.m. [Less than fifteen minutes after the initial stop of the vehicle.] Is that correct?
> A. Yes.
> Q. And did you get any response?
> A. Yes. Mr. Spoerke said that they are pipe bombs, and that he likes to throw them in canals and watch them explode.
> Q. So did Spoerke confirm your belief that these were bombs?
> A. Yes.
> Q. And that they could blow-up?
> A. Yes.
> Q. And did you have any experience in and training at your police department as to what is your procedure to follow if you encounter a vehicle or any other bomb in your city?
> A. Very minimal training on it.
> Q. Okay. And in fact, did you personally call for the bomb squad at that time?
> A. No.

4

(Transcript, p. 47-48). Officer Haugh testified that the only two questions he asked the Defendant at the scene regarding the devices were (1) what the items were and (2) what they were made of. (Transcript, p. 128).

At 2:43 a.m., fewer than twenty minutes after the initial stop of the vehicle, Sergeant Kelly arrived on scene, contacted dispatch to call in the Bomb Squad, and ordered the area cleared. (Transcript, p. 50-52). Officer Haugh then took all four subjects, put them in the back of his patrol vehicle, and, at approximately 2:53 a.m., drove them to a location outside of the perimeter that was being set up around the vehicle containing the bombs. He testified that they were detained for possible charges of possessing some sort of bomb. (Transcript, p. 52-56). Once they were transported to the Boynton Beach Police Department, they were placed under formal arrest. ATF Special Agent Hugh O'Connor Mirandized the Defendant and took a statement from him. (Transcript, p. 179).

In Miranda v. Arizona, the Supreme Court held that law enforcement officers may not conduct a custodial interrogation unless the person questioned is first "warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. 436, 444 (1966). The right to Miranda warnings attaches when custodial interrogation begins. See id. at 479; Dickerson v. United States, 530 U.S. 428, 435 (2000). The "custodial interrogation" requirement of Miranda facially has two requirements, custody and interrogation. See Rhode Island v. Innis, 446 U.S. 291, 300 (1980). A suspect is in custody for Miranda purposes "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." U.S. v. Stevens, 487 F. 3d 232, 241 (5th Cir. 2007) (quoting United

5

States v. Bengivenga, 845 F.2d 593, 596 (5th Cir. 1988)). Additionally, a suspect is interrogated when the officers *"should have known* [their statements] *were reasonably likely to elicit an incriminating response."* Innis, 446 U.S. at 302 (emphasis in original). This standard applies to "questioning or its functional equivalent." Id.

The Defendant contends that, once Officer Haugh observed the contents of the Taco Bell bag, "the initial traffic stop changed from a 'Terry' type encounter into a full blown criminal investigation and, at this time, Officer Haugh should have read Miranda to all of the vehicle's occupants prior to asking any probing questions." (Motion at 5). The only question in this case is whether Defendant was in custody for Miranda purposes at this time. In determining whether a person is in custody, "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (citation omitted). Additionally, a court must examine the totality of the circumstances, and "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California, 511 U.S. 318, 322 (1994). "[A] policeman's unarticulated plan has no bearing on the question whether a suspect was in custody' at a particular time; rather, the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation Id. at 323-34 (citations omitted). Summarizing the Supreme Court's definition of custody, a suspect is detained for Miranda purposes "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." Bengivenga, 845 F.2d at 596.

6

Here, the Defendant's freedom of movement was not restricted to the degree associated with formal arrest. Officer Haugh asked the Defendant to have a seat on the curb with the other two individuals who had exited the vehicle, but the Defendant was not separated from the other individuals at this time, the Defendant was not handcuffed at this time, and the Defendant was not placed under arrest at this time. In Acosta, the Eleventh Circuit recognized that an individual detained during a Terry stop is not at liberty to leave from the time the stop commences until it is concluded. United States v. Acosta, 363 F. 3d, 1141, 1148 (11th Cir. 2004). "If we applied the general Miranda custodial test literally to Terry stops, the result would be that Miranda warnings are required before any questioning could occur during any Terry stop." Id. For those reasons, the Eleventh Circuit in Acosta applied a test that inquired if under the totality of the circumstances a reasonable person would believe that he "was utterly at the mercy of the police, away from the protection of any public scrutiny, and had better confess or else." Id. at 1150.

Based on the totality of the objective circumstances of the interrogation, the Court concludes there was not a formal arrest or restraint on freedom of movement of the degree associated with arrest at the time the objected-to questions occurred. As is always the case in a Terry stop, the officer is justified in taking "such steps as [are] reasonably necessary to protect [his] personal safety." United States v. Hensley, 469 U.S. 221, 235 (1985). Police may take reasonable action, considering the circumstances, to protect themselves during investigative stops. United States v. Kapperman, 764 F.2d 786, 790 n. 4 (11th Cir. 1985); see United States v. Roper, 702 F.2d 984, 988 (11th Cir. 1983). The Court finds that the level of restraint imposed on the Defendant, in being asked to exit the car and to sit on the curb beside the car, was reasonably necessary to ensure the safety of the officers and to safely effectuate the stop. An order to exit one's vehicle only effects

7

a "de minimis" intrusion on the liberty of the driver and is reasonably related to ensuring an officer's safety. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977). Consistent with Terry, each action of law enforcement was orchestrated in the present case to efficiently lead to resolution of the investigation without undue delay. The Terry stop of the Defendant did not involve the type of coercive conduct and atmosphere by law enforcement that requires Miranda warnings. Therefore, the Defendant was not in custody at this point in time, and the officer did not need to advise the Defendant of his Miranda rights. See also Pennsylvania v. Bruder, 488 U.S. 9 (1988) (holding that pre-arrest roadside questioning following an ordinary traffic stop, including incriminating statements concerning consumption of alcohol, were admissible without Miranda warnings).

Moreover, as the Government argues, the officer's questions posed to the Defendant at the scene regarding the devices (what the items were and what they were made of), and the Defendant's response, falls squarely within the public safety exception to the Miranda requirement. The Eleventh Circuit recently applied this exception in U.S. v. Newsome, which it described as follows:

> Miranda v. Arizona, 384 U.S. 436, 445 (1966), established that custodial interrogation cannot occur before a suspect is warned of his or her rights against self-incrimination. Here, Newsome was in the process of being secured and taken into custody when he was interrogated, and he was not warned of his rights before the questioning at issue took place. In New York v. Quarles, 467 U.S. 649, 657-58 (1984), however, the Supreme Court established a narrow exception to Miranda for situations where there is a threat to public safety.
> The public safety exception allows officers to question a suspect without first Mirandizing him when necessary to protect either themselves or the general public. Id. at 655-58. For example, in Quarles, an armed suspect ran into a crowded supermarket where he was apprehended by the police. Id. at 651-52. The officers searched the suspect and found an empty shoulder harness. Id. Without first giving the Miranda warnings, they asked him where he had put the gun. Id. The suspect told the officers that the gun was under some empty cartons in the store, and the gun was recovered. Id. The Court determined that even though the suspect was handcuffed and

8

> posed no threat to the officers when questioned, the interrogation was permissible because the gun created a clear danger to the public. The Court held that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." Id. at 657. The exception to Miranda also applies where there is a threat to the officers rather than the public. Id. at 659.

475 F.3d 1221, 1224-25 (11th Cir. 2007). Similarly, in the instant case, because Officer Haugh suspected that there were explosive devices in a vehicle parked along Federal Highway, a primary access route in Boynton Beach, the officer needed an answer to his question about the identity of those items in the vehicle to ensure the safety of both the officers and the public and to properly respond to the threat posed by the items.

Accordingly, for the reasons stated above, the Court recommends the Motion to Suppress Verbal Statement (DE 73) be denied.

### Recommendation

For the reasons stated above, this Court recommends to the District Court that Defendant Aaron Spoerke's Motion to Suppress Verbal Statement of Defendant Based on Miranda Violation and Request for Hearing (DE 73), filed December 13, 2007, respectively be DENIED.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Daniel T. K. Hurley, within ten (10) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings

9

contained herein. See United States v. Warren, 687 F.2d 347, 348 (11th Cir. 1982) cert. denied, 460 U.S. 1087 (1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this _____4_____ day of January, 2008.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable Daniel T.K. Hurley
All counsel of record